**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BIRKENSTOCK USA, LP

Plaintiff,

v.

U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,

Defendants.

Court No. 26-03876 (Unassigned)

**COMPLAINT**

1. Plaintiff Birkenstock USA, LP ("Plaintiff") is an importer of goods subject to certain challenged customs duties.

2. Beginning in February of 2025, through a series of proclamations and executive orders[1] President Trump invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose new and substantial tariffs ("IEEPA Tariffs") on goods imported from over 180 foreign countries, including countries from which Plaintiff imports goods into the United States (the "Challenged Tariffs"). Plaintiff, as the importer of record, is responsible for paying the Challenged Tariffs on its imported goods.

3. As this Court has held, the IEEPA tariffs are ultra vires because neither the text nor the legislative history of IEEPA delegate the power to the President to set tariff rates. *See V.O.S.*

[1] The Proclamations include, but are not limited to, Proclamation 10886. The Executive Orders include, but are not limited to, Executive Orders 14193, 14194, 14195, 14257, 14228, 14256, 14259, 14266, 14360, 14346, and 14358. The proclamations and executive orders were followed by regulations published in the Federal Register and policy guidance issued by U.S. Customs and Border Protection ("CBP") through its Cargo Systems Messaging Service ("CSMS").

*Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025). The Court's decision was upheld by the United States Court of Appeals for the Federal Circuit. *See also V.O.S. Selections, Inc. v. Trump,* 149 F.4th 1312 (Fed. Cir. 2025)*,* aff'd sub nom. *Learning Res., Inc. v. Trump,* 607 U.S. 229, 2026 WL 477534 (2026)

4. On February 20, 2026, the United States Supreme Court, in a 6-3 decision, ruled that IEEPA did not give the President power to enact the Challenged Tariffs and affirmed the Court's judgment. *Learning Res., Inc. v. Trump*, No. 24–1287, 2026 WL 477534 (U.S. Feb. 20, 2026). Later that day, President Trump issued an executive order terminating the Challenged Tariffs. *See* Exec. Order No. 14,389, 91 Fed. Reg. 9,437 (Feb. 25, 2026) ("Ending Certain Tariff Actions") (issued Feb. 20, 2026).

5. CBP released a CSMS indicating the Challenged Tariffs would no longer be collected after February 24, 2026. *See* CBP's CSMS #67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb. 22, 2026) (stating IEEPA duties "will no longer be collected" for goods entered for consumption on or after 12:00 a.m. ET Feb. 24, 2026); *see also* CBP's CSMS # 67823350, Supreme Court of the United States (SCOTUS) Judgment - International Emergency Economic Powers Act (IEEPA) Tariffs (Feb. 20, 2026) (citing the Supreme Court's Feb. 20, 2026 *Learning Resources* decision).

6. The Government has stated publicly in multiple court filings that if the Challenged Tariffs were found to be unlawful (which has now happened), the Government would not object to reliquidation of affected entries, which would result in a refund of all duties determined to be lawfully assessed, with interest. *See, e.g., AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, No. 25-00255, Slip Op. 25-154, 2025 WL 3634261, at *2 (Ct. Int'l Trade Dec. 15, 2025). In addition, the Supreme Court ruled that the Challenged Tariffs were *void ab initio* and that the Government did not have the legal authority to impose or collect the Challenged Tariffs. *See*

*Learning Res., Inc. v. Trump,* Nos. 24-1287 & 25-250, slip op. at 5–7, 14–16 (U.S. Feb. 20, 2026).

7. On April 7, 2026, Judge Eaton issued an order requiring CBP to liquidate all unliquidated entries, and to reliquidate any liquidated entries for which liquidation is not final, without the assessed IEEPA duties. *See Euro-Notions Fla., Inc. v. United States,* States, Court No. 25-00595, (Ct. Int'l Trade April 7, 2026) (Eaton, J.), ECF No. 12.

8. Through this action, Plaintiff asks the Court to hold that the Challenged Tariffs are unlawful.

9. Accordingly, Plaintiff seeks (i) a declaration that the Challenged Tariffs are unlawful; and (ii) a full refund from Defendants of all import duties and related charges Defendants have wrongfully exacted from Plaintiff as a result of the Challenged Tariffs, with interest.

**PARTIES**

10. Plaintiff, Birkenstock USA, LP, is an importer of record and supplier of footwear.

11. Defendant United States Customs and Border Protection ("CBP") is a component agency of DHS headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

12. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

13. Defendant United States of America received the monies and fees collected under the disputed IEEPA Tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581. Section 1581 also waives the United States' sovereign immunity.

**JURISDICTION**

14. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

15. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

16. Plaintiff has standing to bring this lawsuit because it is the importer of record for goods imported into the United States from countries subject to the Challenged Tariffs as implemented and collected by the United States. As a result of the orders challenged by this lawsuit, Plaintiff has paid IEEPA duties to the United States and thus has suffered injury caused by those orders. Declaratory and injunctive relief from this Court would redress those injuries.

## FACTUAL BACKGROUND

### I. President Trump imposes a series of tariffs on imported goods, purportedly under the authority of IEEPA

### A. The IEEPA duties.

17. On January 20, 2025, President Trump declared the existence of a national emergency at the United States' southern border with Mexico under sections 201 and 301 of the National Emergencies Act (NEA), Pub. L. No. 94-412, 90 Stat. 1255 (1976) (codified as amended at 50 U.S.C. §§ 1601–1651). *See* Proclamation No. 10886, Declaring a National Emergency at the Southern Border of the United States, 90 Fed. Reg. 8,327, 8,327 (Jan. 20, 2025). The President also expanded the scope of the national emergency declared in Proclamation 10886 to include threats purportedly originating from Canada and the People's Republic of China.

18. In response to the declared national emergency, on February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each of the executive orders specifically invokes IEEPA as the statutory authority for the tariffs.

Collectively, the tariffs imposed on Mexico, Canada, and China are referred to in this complaint as the "Trafficking Tariffs."

19. Executive Order 14193, 90 Fed. Reg. 9,113, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*,[2] imposed an additional 25 percent ad valorem duty rate on the importation of certain articles that are products of Canada. The President's claim of emergency powers was based on "the threat to the safety and security of Americans, including the public health crisis of deaths due to the use of fentanyl and other illicit drugs, and the failure of Canada to do more to arrest, seize, detain, or otherwise intercept DTOs, other drug and human traffickers, criminals at large, and drugs," which failure to act "constitutes an unusual and extraordinary threat, which has its source in substantial part outside the United States, to the national security and foreign policy of the United States. *Id.*

20. Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties To Address the Situation at Our Southern Border*,[3] imposed an additional 25 percent ad valorem duty rate on the importation on certain articles that are products of Mexico. The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept DTOs [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id.*

21. Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*,[4] imposed an additional 10

[2] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025).
[3] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025).
[4] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

percent ad valorem duty rate on the importation of certain articles that are products of China. The President's claim of emergency powers was based on "the failure of the PRC government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other TCOs, criminals at large, and drugs," which failure "constitutes an unusual and extraordinary threat, which has its source in substantial part outside the United States, to the national security, foreign policy, and economy of the United States." *Id.*

22. On February 5, 2025, the President issued another order, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*.[5] The amendment clarified the scope of de minimis treatment under the order but did not modify the ad valorem duty rate. *Id.*

23. On March 3, 2025, the President issued Executive Order 14228, 90 Fed. Reg. 11,463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*.[6] The further amendment raised the additional ad valorem duty rate on the importation of articles that are goods of China to 20%. *Id.*

24. On April 2, 2025, President Trump issued Executive Order 14257, 90 Fed. Reg. 15,041, *Regulating Imports with a Reciprocal Tariff To Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*.[7] The order imposed an additional 10% ad valorem duty rate on all imports from all trading partners (except as otherwise provided therein), to be followed by additional ad valorem duties imposed on certain trading partners listed in an annex to the order. The President's claim of emergency powers was based on

---

[5] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025).
[6] Exec. Order No. 14228, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 11,463 (Mar. 7, 2025).
[7] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

the "conditions reflected in large and persistent annual U.S. goods trade deficits, which…reflects asymmetries in trade relationships that have contributed to the atrophy of domestic production capacity, especially that of the U.S. manufacturing and defense-industrial base," which "also impact U.S. producers' ability to export and, consequentially, their incentive to produce." *Id.*

25. Effective April 9, 2025, the annex imposed additional "reciprocal" tariffs on imported articles from 57 countries, with the additional ad valorem duty rates ranging from 11% to 50%. *Id*.

26. On April 8, 2025, in response to retaliatory tariffs imposed by China, the President raised the additional ad valorem duty rate on certain articles that are products of China from 34% to 84%. *See* Exec. Order No. 14259, 90 Fed. Reg. 15,509*, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*.

27. On April 9, 2025, the President temporarily suspended the additional country-specific reciprocal tariffs imposed under the Annex to Executive Order 14257 for all countries—except China—for 90 days.[8] For China, the additional ad valorem reciprocal duty rate was raised from 84% to 125%. *See* Exec. Order No. 14266, 90 Fed. Reg. 15,625 (Apr. 15, 2025), *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*.

28. In addition to the Reciprocal Tariffs, the 20% Trafficking Tariff on imports of articles that are goods from China remained in place, such that most imports articles of that are goods from China faced a *cumulative* ad valorem IEEPA-based duty rate of 145%.

29. On July 7, 2025, the President suspended enforcement of all Reciprocal Tariffs until August 1, 2025. Executive Order No. 14316, *Extending the Modification of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30,823, 30,823 (July 10, 2025). On July 31, 2025, the President again paused

[8] Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025).

enforcement of the Reciprocal Tariffs for seven days. Executive Order No. 14326, *Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37,963, 37,963–64 (August 6, 2025). The Reciprocal Tariffs (other than for China) took effect on August 7, 2025.

30. In implementing the challenged tariffs by executive order, the Defendants directed changes to the Harmonized Tariff Schedule of the United States ("HTSUS"), requiring that goods subject to the challenged tariffs to be entered under new tariff codes, at the new ad valorem duty rates imposed.

31. The Challenged Tariffs are all applicable tariffs imposed under the Proclamation and Executive Orders previously referenced, as well as any applicable tariffs imposed by the President based on authority purportedly granted to the President under IEEPA (the "Challenged Tariffs").

**B. CBP's Implementation of the Challenged Tariffs**

32. CBP is charged with the assessment and collection of duties, including the Challenged Tariffs. *See* 19 U.S.C. §§ 1500, 1502.

33. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11. ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

34. When goods enter the United States, CBP is responsible for assessing and collecting duties on imported goods (after confirming other details of entry) from the importer of record ("IOR") according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

**C. Liquidation of Entries.**

35. "Liquidation means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

36. Typically, when goods are imported into the United States (generally referred to as *entry*), the importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin and HTSUS classification for the imported goods. *See* 19 U.S.C. § 1484. CBP then fix[es] the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

37. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

38. Unless extended, liquidation of an entry must occur within one year of the date of entry. *See* 19 U.S.C. § 1504(a). CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

39. This Court possesses the authority "to order reliquidation in cases involving constitutional challenges to duties under 28 U.S.C. § 1581(i)." *AGS Co. Automotive Solutions v. United States*, Slip. Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025) (ECF No. 29).

**II. IEEPA does not authorize the Challenged Tariffs.**

40. Each of the Challenged Tariffs cites IEEPA, 50 U.S.C. § 1701 *et seq*., the National Emergencies Act, 50 U.S.C. § 1601 *et seq*., section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 as the statutory authority to impose the tariffs. None of these statutes authorizes the President to impose tariffs.[9]

41. As of the date of this complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariffs. Plaintiff's imports subject to the Challenged Tariffs entered the United States under one or more of the new HTS codes promulgated by CBP in response to the executive orders

[9] *See* **Exhibit A** for a list of the challenged entries.

discussed above.

42. Plaintiff paid IEEPA duties on a continuous basis since the enactment of the Challenged Tariffs until they were terminated.

## CAUSES OF ACTION

### Count I: The Challenged Tariffs are *ultra vires* under *Learning Resources*

43. Plaintiff reasserts and incorporates by reference the above-stated paragraphs as if set forth fully herein.

44. This Court has expressly held that the President exceeded his authority under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq., when he imposed the Challenged Tariffs on goods imported into the United States. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025), *aff'd in relevant part*, *vacated in part, and remanded sub nom. V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *aff'd sub nom. Learning Res., Inc. v. Trump*, 607 U.S. 229, 2026 WL 477534 (2026). As the Court explained, IEEPA authorizes the President only to "investigate, regulate, or prohibit" certain foreign transactions in times of national emergency; it does not authorize the imposition of tariffs or duties on imports, and neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates.

45. Plaintiff therefore seeks a declaration that the Challenged Tariffs are *ultra vires* as to Plaintiff. Plaintiff also asks the Court to order reliquidation of all entries on which Plaintiffs paid the IEEPA duties without respect to the IEEPA duties, and order refund of all IEEPA duties collected from Plaintiff, with interest as provided by law.

### Count II: Declaratory relief under 28 U.S.C. § 2201

46. Plaintiff reasserts and incorporates by reference the above-stated paragraphs as if set forth fully herein.

47. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

48. Plaintiff's claims present an actual controversy as to the President's authority under IEEPA and the authority of Defendants to implement and collect the Challenged Tariffs.

49. Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA duties to the United States as a result of the Challenged Tariffs on goods it has imported into the United States.

50. The Court can exercise its equitable power to enter a declaratory judgment that the Challenged Tariff Orders are unlawful for any of the above reasons, and that Defendants lack the authority to implement and collect the resulting tariffs, as to Plaintiff.

**PRAYER FOR RELIEF**

51. WHEREFORE, Plaintiff respectfully prays for judgment in its favor that:

a. Declares that the President lacked the authority under IEEPA to enact the Challenged Tariffs;

b. Declares that collection by Defendants of the Challenged Tariffs was *ultra vires* and *void ab initio* with respect to Plaintiff;

c. Orders the Defendants to refund to Plaintiff the IEEPA duties collected on Plaintiff's entries on which the Challenged Tariffs were paid, with interest as provided by law;

d. Award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

e. Grant such further relief as this Court deems proper and just under the circumstances.

Dated: September 4, 2026

Respectfully submitted,

BAKER & HOSTETLER LLP

By: s/ Michael S. Snarr
Michael S. Snarr
e-Mail: msnarr@bakerlaw.com
BAKER & HOSTETLER LLP
1050 Connecticut Ave N.W., Suite 1100
Washington, D.C. 20036
(202) 861-1710 Telephone
(202) 861-1783 Telecopier

**ATTORNEY FOR PLAINTIFF BIRKENSTOCK USA, LP**

**CERTIFICATE OF SERVICE**

BIRKENSTOCK USA, LP v. United States, Court 26-03876 (Unassigned)

Pursuant to USCIT R. 5 and Paragraphs 5 and 6 of Administrative Order 02-01 of the U.S. Court of International Trade, I hereby certify that on the 4th day of September, 2026, I have caused service of the Summons, Complaint, Form 5, and Form 13 on the party representatives below by certified mail, return receipt requested.

Attorney General of the United States
c/o Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, DC 20229

/s/ Michael S. Snarr
Michael S. Snarr
e-Mail: msnarr@bakerlaw.com
BAKER & HOSTETLER LLP
1050 Connecticut Ave N.W., Suite 1100
Washington, D.C. 20036
(202) 861-1710 Telephone
(202) 861-1783 Telecopier

**ATTORNEY FOR PLAINTIFF**
**BIRKENSTOCK USA, LP**